## Case No. 17,743.

WILLIAMS v. The VANDERBILT and The COLLINS.

[N. Y. Times, Dec. 15, 1863.]

District Court, S. D. New York. 1863.

COLLISION—TOW WITH VESSEL AT DOCK—LIABILITY OF TUG.

[A steamtug, towing a floating derrick, which drifted against a vessel moored at a dock, *held* not liable, where the only fault was in starting out with her tow from the Brooklyn Navy Yard in the existing conditions of tide and weather; it appearing, however, that she was not at liberty to choose her own time, but was under the direction of a naval officer of the United States.]

[This was a libel by John E. Williams and others against the steam tug Vanderbilt and the derrick Collins. Certain exceptions to the libel were heretofore overruled by the court. Case No. 17,744. Thereafter the cause was heard, and the court held that the Collins was free from blame, but allowed time for the steam tug to be heard on the question as to whether the fact of her being at the time in the employment of the United States made any difference with respect to her liability. Case No. 17,742. The case has now been heard upon this latter question.]

Owen, Gray & Owen, for libelants.
Beebe, Dean & Donahue, for the tug.
Benedict, Burr & Benedict, for the derrick.

SHIPMAN, District Judge. This case is a very simple one, and the witnesses differ very little in their narrative of facts. The suit is brought by the owners of the ship Chancellor to recover damages to her inflicted by a blow from the derrick Collins, while the latter was in tow by the steam tug Vanderbilt, on the 29th of September, 1862. The Chancellor was lying at the dock of the Brooklyn Gas Company, in Brooklyn, below the navy yard, and the derrick was being towed out from the navy yard by the tug, on her way to the neighborhood of Sandy Hook. As the tug and derrick pushed out from the navy yard into the East river, and by where the Chancellor lay, the ebb tide caught the derrick, and swung her down against the stem of the ship, doing the damage complained of, which was considerable, inasmuch as she had to be taken on to dry dock for repairs. The derrick was owned by parties who had hired her to the United States government, and she was at the time of the accident in service and under the exclusive control and direction of the agents of the United States. She is a heavy mass of timber and plank, 76 feet square, with a large framework erected thereon, and used for raising heavy weights; she is unmanageable by any of the ordinary means used in the navigation of vessels. She has no sails, or other means of propulsion of her own, but, when moved, is towed like a log or mere hull. She was lying at the navy yard a short time before the collision, when the tug Vanderbilt, also in the service of the United States, was ordered to tow her out into the stream and down the bay, to or near Sandy Hook. It was necessary, or at least convenient, to start in the ebb tide, and the tug was ordered to hitch on and tow her out. This she did, and there is no evidence of fault of her officers and men. She went out in obedience to the orders of the officer of the navy in charge, and hauled up the river as far as she safely could, without coming in collision with vessels at anchor. The derrick, however, being an inert mass, did not follow in a line with the tug, but as she came within sweep of the tide she was carried down against the stem of the libelant's ship. Those navigating the tug could have done nothing more than they did do to prevent the collision. She was turned up stream as far as she could be safely, and exerted herself to keep the derrick as far up as possible, but the effect of the tide still carried the latter down and produced the collision.

The only fault shown by the evidence was in standing out under the circumstances and on the ebb tide. But the time of starting was not fixed or controlled by the tug, but was fixed and controlled by the naval officer in charge of the enterprise. He, and not the master or owners of the tug, had the right to fix the time of starting, and exercised this right. All the tug was bound to do was to exercise proper skill in performing the voyage; this the evidence showed she did. Had the tug been under a mere general contract to tow the derrick down to Sandy Hook, with the right to select her own time, then the responsibility would have been on the tug for any error in attempting the voyage at a dangerous time. She would have been liable for the consequences of an attempt to go out with a strong ebb tide, as well as liable for any other error during the voyage. But being under the control of the naval officers as to the time of starting, and there being no other fault, the movements of the tug being properly conducted, she is not liable. The

facts in this case take it out of the rule laid down in those cited by the libelant's counsel. Let a decree dismissing the libel be entered.